## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DALE FAGER, JR., MICHELE D. FAGER, and
GUNTER-MILLER ENTERPRISES, LTD., for
themselves and all others similarly situated,

                   Plaintiffs,

          v.                                          Civ. No. 14-cv-00870 JCH/KK

CENTURYLINK COMMUNICATIONS, LLC,
LEVEL 3 COMMUNICATIONS, LLC, and
WILTEL COMMUNICATIONS, LLC,

                   Defendants.


### MEMORANDUM OPINION AND ORDER

On April 10, 2015, in accordance with Federal Rule of Civil Procedure 23(e), the parties

filed their *Joint Motion for Final Approval of Class-Action Settlement* . . .  [Doc. 34]. On May

28, 2015, the Court held a final fairness hearing. In attendance were counsel for the class

plaintiffs, counsel for the defendants, and counsel for the objector, James Ziegler. The Court

heard argument from all counsel regarding the merits of the motion now before it. In addition,

the Court has reviewed the extensive briefs and evidence pertaining to the motion that were filed

by the parties and the objector. *See, e.g.,* Docs. 29, 30, 31, 34, 35, 37, 39, 40. As set forth herein,

the Court concludes that the class action settlement should be approved and the motion should be

granted. In doing so, the Court makes the following factual findings. [1]

---

[1] This Court is also entering other orders as part of its final approval of the settlement.  First, the
Court is entering an Order and Judgment Approving Class-Action Settlement and Directing
Notice of Final Approval.  Second, the Court is entering an Easement Deed by Court Order in
Settlement of Landowner Action (the "Court-Ordered Easement").  Third, Plaintiffs have moved

## FACTUAL BACKGROUND

This class-action settlement resolves a property-rights dispute that arises out of the installation of fiber-optic cable on railroad rights of way by CenturyLink Communications, LLC (f/k/a Qwest Communications Company, LLC), Level 3 Communications, LLC, and WilTel Communications, LLC (collectively "the Settling Defendants"). The settlement involves the claims of class members who own property adjacent to or underlying a right of way that a railroad originally acquired under the Federal Land Grant Act of 1875.  In New Mexico, there are approximately 631 miles of rights of way at issue.

The settlement agreement in this case is one of forty-six state settlement agreements that resulted from extensive negotiations conducted with the assistance of mediator Eric D. Green of Resolutions, LLC in Boston, Massachusetts, resolving fiber-optic-cable litigation that was nationwide in scope.[2] *See* Transcript of May 28, 2015 Hearing ("Tr.") at 16-17. Since June 2011, forty-two federal district courts and one state court have given final approval to their state-specific versions of those settlements following preliminary approval, issuance of notice to the class, an opportunity to object, and a final fairness hearing.[3] The structure and general terms of

_____

under Rule 23(h) for an award of attorneys' fees and expenses, and the Court addresses that motion in separate findings of fact and conclusions of law.

[2] The parties did not include in their negotiations Tennessee, where separate litigation had been filed, and was eventually partially settled, by other plaintiffs' counsel; Louisiana, which was also settled by other plaintiffs' counsel; or Alaska or Hawaii.

[3] Federal courts in the following states have granted final approval to their state-specific versions of the settlement:  Idaho, Illinois, Alabama, North Dakota, Montana, Michigan, Minnesota, Vermont, Kansas, Indiana, Virginia, New Jersey, New York, Florida, West Virginia, Oklahoma, Maryland, Nebraska, Iowa, North Carolina, Wisconsin, Arkansas, Wyoming, Georgia, Colorado, Mississippi, Missouri, Utah, South Dakota, Ohio, Washington, Nevada, Connecticut, Rhode Island, Pennsylvania, California, Oregon, South Carolina, New Hampshire, Kentucky, Texas,

the proposed New Mexico settlement (hereafter, "the settlement") before this Court are identical to settlements approved in the other states.

Under the settlement, class members who own or owned property adjacent to land-grant rights of way and submit qualified claims will be paid $0.75 per foot. New Mexico class members may also qualify for higher benefits of $1.25 per foot if they can establish that: (1) a predecessor in interest obtained title to the land at issue before enactment of the applicable land-grant statute or (2) even though the class member's predecessor acquired the land after enactment, the railroad's interest in the right of way was not perfected until later. *See* Doc. 21-2.

All class members who did not opt out will release and convey an easement to each Settling Defendant who owns telecommunications facilities in a railroad right of way adjacent to the class member's property. The easements grant the Settling Defendants, and their successors and assigns, a non-exclusive, perpetual easement in the right-of-way property for the presence of the fiber-optic cable and related equipment. *Id*.

Specifically, the easements provide for a Settling Defendant's right to be on the right of way where its telecommunications equipment currently is located or subsequently moved, extending no more than ten feet on each side of a Settling Defendant's telecommunications cable system. The scope of the easements does not permit the installation of large structures, cell towers, or other components of a primarily above-ground telecommunications system. The easements also provide for the right of reasonable ingress and egress to and from the right of way. *Id*.

---

and Massachusetts. A Delaware state court approved its version of the settlement. The defendants in all forty-three of these actions were one or more of the Settling Defendants and/or Sprint Communications Company L.P. The parties anticipate seeking approval of settlements in the remaining states of Arizona and Maine.

Under the settlement agreement, the easements may be executed by various means, but the easements always have the same substantive provisions. For example, the settlement agreement asks this Court to enter the Court-Ordered Easement, which the Settling Defendants may record. Under the settlement agreement, through Rule 70, the parties ask the Court to authorize the Claims Administrator to execute and convey to each Settling Defendant, if necessary, an easement on behalf of those current-landowner class members who do not personally execute and deliver the easement. *Id.*

Under the settlement, the Settling Defendants will also pay $1,300 jointly in incentive compensation to class representatives Dale and Michele Fager and $1,300 to Gunter-Miller Enterprises. Except as provided in the settlement agreement, the class representatives will receive no compensation for service as class representatives. *Id.*

On November 3, 2014, the Court entered an order preliminarily approving the settlement, certifying the settlement class, and approving the form and manner of notice. *See* Doc. 23. On January 14, 2015, the claims administrator mailed notices to 5,662 current and prior property owners along railroad rights of way in New Mexico containing telecommunications facilities installed by the Settling Defendants, and opened a settlement call center and website. Doc. 34-2 at 2-4. A summary notice was published in newspapers and magazines with circulation throughout the state. *Id.* at 3.

The notice program was designed with the assistance of Kinsella Media, an advertising and legal notification firm specializing in the design and implementation of notification programs to reach unidentified putative class members. Doc. 34-6. Direct mail notice was sent to all persons listed in county tax records as the owners of land next to the cable side of the rights of way. *Id.* The landowner database was created in 2003 and updated in both 2006 and 2014. Doc.

34-2. As a result, the database contained the names of all current landowners listed in county tax records and many prior landowners who were current owners in 2003 or 2007, but then sold the property and became prior owners. The direct mail notice reached 75% of the class, including all current owners listed in county tax records and many prior owners. Doc. 34-6. All unidentified class members benefitted from the published notice. According to Katherine Kinsella, President of Kinsella Media, the combination of mailed and published notice reached 86.1% of all class members.  Doc. 21-5.

Following implementation of the notice program, only five potential class members requested exclusion of six parcels. The exclusions cover a maximum of 2,545 linear feet of fiber-optic cable, representing less than one-tenth of one percent of the fiber-optic cable covered by the settlement.   Doc. 34-2. The Claims Administrator received only one objection to the settlement.[4]

The sole objection to the settlement was filed by James Ziegler. Ziegler objects principally to the sufficiency of the notice to class members, arguing that, where real property interests are at stake, a "higher degree of notice" is required to satisfy due process, and to the imposition of the easements, asserting that they are detrimental to class members and that the Court lacks authority to impose them on class members.  Ziegler also asserted the settlement was the product of collusion between the Settling Defendants and Class Counsel. *See* Docs. 29, 31.

---

[4] On October 22, 2014, the Settling Defendants also provided notice of the settlement to the New Mexico Attorney General and the United States Attorney General, as required under the Class Action Fairness Act,  28 U.S.C. § 1715.  Neither the New Mexico Attorney General nor the U.S. Attorney General filed an objection to the settlement.

## DISCUSSION

### I.      Legal Standard

"'It is well settled, as a matter of sound policy, that the law should favor the settlement of controversies.'" *Lane v. Page*, 862 F. Supp. 2d 1182, 1229 (D.N.M. 2012) (quoting *Grady v. De Ville Motor Hotel, Inc.,* 415 F.2d 449, 451 (10th Cir. 1969)). Indeed, "'public policy strongly favor[s] the pretrial settlement of class action lawsuits . . . .'"  *New England Health Care Employees Pension Fund v. Woodruff*, 520 F.3d 1255, 1258 (10th Cir. 2008) (quoting *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992)). On a motion for final approval of a class action settlement, and after conducting a fairness hearing, the Court's inquiry is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 54(e)(2); *see, e.g.*, *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) ("In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate."). "In assessing whether the settlement is fair, reasonable and adequate the trial court should consider:

> (1)   whether the proposed settlement was fairly and honestly negotiated;
>
> (2)   whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3)   whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4)   the judgment of the parties that the settlement is fair and reasonable.

*Id.*; *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (same) (citations omitted); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 (2004) (a settlement satisfies the "fair, reasonable, and adequate" standard when "the interests of the class are better served by the settlement than by further litigation."). Applying those factors, the Court concludes that the settlement is fair reasonable, and adequate.

First, despite Ziegler's suggestion of collusion, the settlement was negotiated over a nearly two-year period, under the auspices of a respected, neutral mediator. Ziegler points to no evidence of collusion, and the evidence that is before the Court supports the inference that the parties extensively negotiated the settlement at arm's length. Thus, the Court concludes that the settlement was fairly and honestly negotiated, satisfying the first factor.

Second, the Court believes that serious questions of law and fact permeate the underlying case, making the Plaintiffs' recovery on their claims uncertain. For example, it is unclear whether a railroad received sufficient rights to permit a telecommunications use under the 1875 land-grant statute. Additional significant issues concerned the rules that determine whether railroads hold fee title to their rights of way or only easement interests; whether a right-of-way easement granted to a railroad is broad enough to permit the railroad to license third-party telecommunications use of the property; the length of the applicable statute of limitations; whether a theory of continuing trespass could provide the basis for the assertion of additional claims after original claims were barred; whether the telecommunications companies had the power of eminent domain; whether inverse condemnation was an exclusive remedy; and the applicable measure of damages for trespass and inverse condemnation. Rulings adverse to Plaintiffs on any of these issues would have either greatly reduced, or eliminated altogether, class members' chances for recovering anything in this litigation. The settlement thus affords class members the opportunity to obtain prompt, certain, and significant monetary compensation without needing to undergo additional expensive, lengthy, and risky litigation. As a result, the Court concludes that the second factor weighs in favor of approval of the settlement.

Third, the fiber-optic-cable litigation began well more than a decade ago, and has already been protracted and expensive. The settlement pays to qualified class members meaningful cash

compensation per linear foot of covered rights of way. The easement established through approval of the settlement provides class members (and potential future purchasers of their property) with a binding legal document that grants Defendants substantially more limited rights than would a judgment on the merits in Defendants' favor. The Court concludes that the value of those and other elements of the recovery far outweigh the mere possibility of future relief after yet further litigation, thereby satisfying the third factor.

Fourth, the Court has the benefit not only of the judgment of the parties and mediator that the settlement is fair, reasonable, and adequate, but also the judgment of forty-two federal courts and one state court that have reached that same conclusion following preliminary approval, notice to the class, an opportunity to object, and a final fairness hearing on their versions of the settlement pending here. Thus, the fourth factor weighs in favor of approval of the settlement.

Furthermore, in addition to the factors that the Court considers on a motion for *preliminary* approval of a class-action settlement, on a *final*-approval motion the Court weighs the reaction of the class members to the proposed settlement after the class members have received notice and been informed of their opportunity to object. *See Rutter*, 314 F.3d at 1189 (district court did not abuse its discretion in determining that the settlement, "from which an extremely small percentage of class members opted out, was fair, reasonable, and adequate"); *Ryskamp v. Looney*, Civil Action No. 10-cv-00842-WJM-KLM, 2012 WL 3397362, at *4 (D. Colo. Aug. 14, 2012) ("The reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy . . . .") (quoting *In re Rambus Inc. Derivative Litig.*, No. C 06-3513, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009)); *id.* ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96,

118 (2d Cir. 2005)).  As set forth above, just a handful of class members opted out and only one objected.  This absence of opposition to the settlement weighs heavily in support of final approval.

As to Zeigler's specific objections to the notice plan and the easement, the Court finds that they are without merit.

In *Mullane v. Central Hanover Bank & Trust Co.*, the Supreme Court explained that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action."  339 U.S. 306, 314 (1950).  The notice provided in this case satisfied that standard.  Indeed, it is not clear what additional level of notice could have been provided to class members in this case. While it is true that the *subject matter* of the notice is necessarily complex, the notice sets forth and explains the issues in an organized and straightforward manner. The Court cannot think of, nor has Ziegler set forth, any concrete ways in which the notice could have been improved.

As Katherine Kinsella explained in a declaration filed with the Court: "[E]very person listed in county records as a current owner of property next to a Right of Way was mailed a Detailed Notice that clearly provided complete information on the easement, legal rights, and repercussions of taking or not taking an action, explained at a 9th grade reading level."  Doc. 40-1 at ¶ 25.  The Court agrees with Kinsella's conclusion that "[n]o 'higher degree of notice' was practicable or reasonable under the circumstances."  *Id.*

Furthermore, the forty-three other courts that have approved their state versions of the settlement—including federal courts in each of the other states within the Tenth Circuit, Colorado, Kansas, Oklahoma, Utah, and Wyoming—have found no flaw with the notice.  The same is true of courts outside the Tenth Circuit. The Nebraska district court, for example,

explained in detail how the notice—essentially the same notice as here—satisfied the requirements of due process:

> The notice given in this case met those requirements; it informed the class members of the action and their options, accurately characterized all the pertinent terms of the settlement agreement (including attorney fees and expenses), and afforded the class members a reasonable opportunity to object. As established in the Court's preliminary order approving notice, notices were sent directly to property owners who could be identified, and notices by publication were also provided identifying a website where further information could be obtained. The record establishes that the direct notices were sent and the publications were performed. In short, the notice satisfied the requirements of Rule 23 and due process.

*Ramsey v. Sprint Commc'ns Co.*, No. 4:11-CV-3211, 2012 WL 6018154, at *2 (D. Neb. Dec. 3, 2012). This Court agrees with these statements by the Nebraska federal court in *Ramsey*.

The Kentucky district court also turned aside challenges to the Detailed Notice like those that Ziegler makes here, based on the notice's alleged "fail[ure] to inform the class members that unless they opt out, they will give the Defendants a perpetual telecommunications easement in the railroad right of way" and on its purported "failure to use plain language." *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 290 (W.D. Ky. 2014). Like Ziegler, the objector in Kentucky argued that the Detailed Notice's "'eight pages of single space type' [was] designed to 'overwhelm and confuse the average Class Member,' effectively dissuading them from reading it." *Id.* at 292. In rejecting all those contentions, the *Dick* court explained:

> [T]he Court finds that the notice at issue adequately disclosed all material elements of the settlement, including the easement. The direct notice form advises that recipients' legal rights will be affected whether or not they take action and explains that the settlement will provide the Defendants with "certain telecommunications easement rights of way." (Ex. 4: Mailed Notice at 1.) These principles are reiterated throughout the direct notice form. (See, e.g., Question 5, Ex. 4 at 3 ("[U]nder the Settlement, Class Members give the Defendants an Easement in the railroad right of way. An easement permits a person to use property for a stated purpose. The Easement given through the Settlement will be for Telecommunications Facilities and is described more fully in Question 17.").)

Finally, the Court finds that the notice used simple, readily understandable language to describe the options available to Class Members. Furthermore, this information was presented in a well-organized fashion, including a table of contents and addressing in question-and-answer format a total of thirty-one typical queries. (See Ex. 4: Mailed Notice at 2 (listing the categories of the table of contents, including "The Claims Process," "Excluding Yourself from the Settlement," "Objecting to the Settlement," and "If You Do Nothing."))

In sum, the notice in the case at bar is adequate under Fed. R. Civ. P. 23 and the standards of due process. It was directed in a reasonable manner to all prospective class members who would be bound by the Settlement Agreement. Moreover, it fairly apprised the prospective class members of the terms of the proposed Settlement Agreement and their options with respect to their decision whether to join the class.

*Id*. at 292-93. This Court agrees with these statements by the Kentucky federal court in *Dick*. For the same reasons, the Court rejects Ziegler's argument that the notice here failed to satisfy due process.

There is no support for Ziegler's assertion that a "higher degree of notice" is required where real property rights are at issue. The degree of notice required depends not on the categorization of the property rights at stake but rather on the value and importance of those rights. Here, class members will be deprived of their right to contest the continued presence and maintenance of fiber optic cable that is buried in an active railroad right-of-way and which has been there for 15 to 25 years. In mailing notice to every class member identified in county tax records as an owner of property next to a right of way, the parties have provided "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

As for Ziegler's objections to the easements, again, forty-three other courts have given final approval to state-specific class action settlements that involve the issuance of identical easements. The parties provided the proposed easements to this Court well before the final

fairness hearing. *See, e.g.,* Settlement Agreement (Doc. 21-2) at its Exhibits H, I & K.  This Court reviewed the easements with care, discussed them at length with counsel for the parties and for Ziegler at the final fairness hearing, and approves them. Ziegler's arguments that the terms of the easements are unfair and that the Court lacks authority to impose them on class members who do not personally execute and return and the easement documents miss the mark.

As an initial matter, contrary to Ziegler's suggestion, the easements will have no impact whatever on class members who no longer own property adjoining the pertinent railroad rights of way. These prior owners need not execute easements to obtain settlement benefits, and they could not possibly have property rights in rights of way adjoining property they no longer own. As a result, the sole possible impact of the easements is on current owners of property adjoining the rights of way.

The Court rejects Ziegler's characterization of the easements as a detriment to current-owner class members. The Court must assess the easements in light of how those class members would fare if they were to lose on their trespass claims. Plaintiffs' Complaint seeks an order declaring that Defendants have no right to use for telecommunications purposes the right of way adjoining current-owner class members' property. *See* Complaint (Doc. 1), Prayer for Relief ¶ 5. If those class members were to litigate this claim and lose, Defendants would obtain a judgment establishing that they have unlimited rights to use the rights of way for those purposes— including (for example) the right to construct new telecommunications facilities of any size on the rights of way—subject only to their agreements with the railroads.

The easements under the settlement provide much greater restraint on the Defendants' use of the land. Specifically, the easements will restrict the premises Defendants may use to a 20-foot wide area within the right of way; they do not authorize construction of microwave towers,

cell towers, new regenerator huts, or other structures on the easement premises; and they do not authorize expansion of existing telecommunications structures by more than 25 percent. The easements thus place current-owner class members in a better position than they would occupy if they litigated their claims and lost.

Moreover, even though the easements will have minimal impact on current-owners class members, they are a crucial component of the settlement. Without them, Defendants would have no assurance that they will not be sued again (and again) by future owners of the properties. To be effective, settlements of class action lawsuits must bar all claims—past, present, and future — at the core of plaintiffs' complaint. The ability of a settlement to "bar later claims based on the allegations underlying the claims in the settled class action" serves "the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 261 F.3d 355, 366 (3d Cir. 2001) (citation and quotation marks omitted).

Ziegler objects to the easements' provision allowing ingress and egress to and from the easement premises. That provision affords Defendants "the right of reasonable ingress and egress to and from the Easement Premises . . . [1] for repair and maintenance, [2] over any existing private roads of Grantor, [3] where access from public or railroad roads is not reasonably practical, [4] provided Grantee has made commercially reasonable efforts to give prior notice to Grantor of Grantee's use of Grantor's private roads," and [5] further provided that Grantor retains its right to recover "for any damages to Grantor's property outside of the Easement Premises caused by Grantee's action." *See, e.g.,* Settlement Agreement (Doc. 21-2) at its Exhibit K, p. 4. But any rights afforded by this provision are extraordinarily limited:  It allows a Defendant to use the Grantor's property to access the right of way: [1] only to repair or maintain

its cable; [2] only if the Grantor has an existing private road that provides access to the right of way (which will rarely be the case, and which means the Defendant cannot access any part of the Grantor's property other than such road); [3] only if access to the right of way from public or railroad roads is not reasonably practical (which again will rarely be the case); [4] only if the Defendant has made "commercially reasonable efforts to give prior notice to Grantor" of any use of the Grantor's road; and [5] only if the Defendant remains liable for any damage to Grantor's property.

The ingress-egress provision in the easements places no burden whatever on the property of most current owner class members and imposes the most minimal possible burden on the few remaining properties.  Those access rights, moreover, likely would be implied under the doctrine of easement by necessity.  *See Turley v. Valdez*, 2013 WL 4516024, *3 (N.M. App. Feb. 26, 2013) (absent clear indication of contrary intent, grantor is presumed to convey means of access where access is reasonably necessary).

Similarly without merit is Ziegler's assertion that, under Rule 70, the Court cannot authorize the Claims Administrator to execute easements on class members' property. Rule 70(a) provides that "[i]f a judgment requires a party to convey land . . . and the party fails to comply within the time specified, the court may order the act to be done . . . by another person appointed by the court." The settlement agreement and judgment authorize the Claims Administrator to execute the easement under just these circumstances. Although class members "may be parties for some purposes and not for others," *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002), they are unquestionably parties in the sense that they are bound by (1) the settlement, *see id.*, and (2) the judgment, *see* Fed. R. Civ. P. 23(c)(3); *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984).  The class members are therefore "parties" for purposes of Rule 70.

Furthermore, courts in at least forty-three other cases have approved settlements giving those courts this precise authority. Those cases include *Dick*, where (as here) an objector argued that "Fed. R. Civ. P. 70 does not authorize the granting of" easements by the Claims Administrator. 297 F.R.D. at 291. The court rejected this objection, stating:

> [T]he Court finds that it has the authority under Federal Rule of Civil Procedure 70 and as provided in the Settlement Agreement to direct all Class Members who own a current interest in a Qualifying Parcel and who have not requested exclusion from a Settlement Class, regardless of whether they file a Claim Form for Landowner Benefits, to grant a Claims Administrator Telecommunications Cable System Easement Deed to the Settling Defendants, as provided in the Settlement Agreement. Rule 70 authorizes the appointment of a proxy for any 'party' that fails to perform a specific act mandated by the court, regardless of whether or not that party is a defendant. This conclusion accords with that of courts in other fiber optic right-of-way class action lawsuits, in which defendants have obtained easements from landowners who choose not to opt out.

*Id.* at 291-92 (citations omitted). The Court agrees.

Finally, the Court had the opportunity to review extensive briefing from Ziegler, including a lengthy memorandum with numerous exhibits. Additionally, the Court gave Ziegler's counsel an opportunity to make arguments during the May 28, 2015, fairness hearing that lasted more than three hours. After consideration of Ziegler's arguments and written materials, the Court concludes that Ziegler's objections are not supported by the law and facts, and are otherwise not a sufficient basis to deny final approval of the settlement.

In addition, Plaintiffs have moved the Court to approve incentive awards to the class representatives. Incentive awards are fairly typical in class action cases. *See* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008). "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. App'x. 232, 235 (10th Cir. Sept. 11, 2009) (unpublished)

(internal quotation marks and citation omitted); *see also Lucken Family Ltd. Partnership v. Ultra Resources, Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (unpublished) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.") (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co.*, 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (unpublished) ("The practice of granting incentive awards to Class Representatives is common and widespread in class litigation.") (citations omitted).

Here, the Settling Defendants have agreed to pay $1,300 jointly to Dale and Michele Fager and $1,300 to Gunter-Miller Enterprises.  Except as provided in the Settlement Agreement, the class representatives will receive no compensation for service as class representatives. Settlement Agreement (Doc. 21-2) at § II.D.  The requested incentive awards are reasonable. *See, e.g.*, *In re Universal Service Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (unpublished) (granting $10,000 incentive award to subclass representative); *Lucken Family Ltd. Partnership*, 2010 WL 5387559, at *6 (approving $10,000 award representing 0.09 percent of value of common fund); *Ponca Tribe of Indians*, 2009 WL 2836508, at *2 (approving incentive awards ranging from $1,000 to $15,000) (citations omitted).  Accordingly, the Court approves the proposed incentive awards to the class representatives.

**IT IS THEREFORE ORDERED** that the joint motion for final approval of class-action settlement [Doc. 34] is **GRANTED**.

It is further **ORDERED** that the Court approves the incentive awards to the class representatives in the amount set forth herein.

_____

**UNITED STATES DISTRICT JUDGE**