IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DALE FAGER, JR., MICHELE D. FAGER, and
GUNTER-MILLER ENTERPRISES, LTD., for
themselves and all others similarly situated,

                Plaintiffs,

    v.                                                       Civ. No. 14-cv-00870 JCH/KK

CENTURYLINK COMMUNICATIONS, LLC,
LEVEL 3 COMMUNICATIONS, LLC, and
WILTEL COMMUNICATIONS, LLC,

                Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS'
FEES AND EXPENSES TO SETTLEMENT CLASS COUNSEL**

Under Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2), Plaintiffs in this class action have moved for an award of attorneys' fees and expenses to Settlement Class Counsel. Under Rule 23(h)(3), the Court must make findings of fact and state its conclusions of law. The Court does so, as follows, in granting the motion:

**FINDINGS OF FACT**

1. This class-action settlement resolves a property-rights dispute that arises out of the installation of fiber-optic cable on railroad rights of way by CenturyLink Communications, LLC (f/k/a Qwest Communications Company, LLC), Level 3 Communications, LLC, and WilTel Communications, LLC ("the Settling Defendants"). The claims resolved by the Settlement affect parcels of land in New Mexico covering approximately 631 miles of rights of way throughout the state.

2. On November 3, 2014, the Court entered an order preliminarily approving the Settlement, certifying the Settlement class, and approving the form and manner of notice. On January 14, 2015, the claims administrator mailed notices to 5,662 current and prior property owners along railroad rights of way in New Mexico containing telecommunications facilities installed by the Settling Defendants, and opened a Settlement call center and website. The notice, which was posted on the website, advised in pertinent part:

> The Court will decide how much Class Counsel and any other lawyers will be paid. Class Counsel will ask the Court for attorneys' fees, costs and expenses of $1,347,000 . . . . The Defendants will separately pay these fees and expenses and the payment will not reduce the benefits available for the Class.

Notice ¶ 25. The Notice further advised that the Court would hold a Fairness Hearing on May 7, 2015, at which time the Court would "consider how much to pay Class Counsel." *Id*. ¶ 28. On May 7, 2015, the Court held the final Fairness Hearing.

3. The Settlement Agreement provides in pertinent part: "Settlement Class Counsel may seek from the Court a cash award of fees and expenses from the Settling Defendants, in an amount not to exceed the Maximum Attorneys' Fee Award, to which the Settling Defendants will not object." Settlement Agreement § II.E.1. The Settlement Agreement defines the Maximum Attorneys' Fee Award as $1,347,000. Settlement Agreement Definitions. The Settlement Agreement further provides that "the Settling Defendants shall deposit any attorneys' fee award approved by the Court, which shall not exceed the Maximum Attorneys' Fee Award, into the interest-bearing escrow account established with U.S. Bank in New York, New York, no later than ten (10) days after the date on which the Order and Judgment becomes Final." Settlement Agreement § II.E.2.

4. The escrow account established with U.S. Bank is a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B. The escrow account is maintained by U.S.

Bank in New York, New York, with the Garretson Firm Resolution Group, Inc. ("GFRG") serving as the Fund Administrator. These arrangements are consistent with the terms of an Escrow Agreement entered into as of August 26, 2011 between certain Settlement Class Counsel, U.S. Bank, and GFRG.

5. Settlement Class Counsel estimate that approximately $2,501,000 in cash benefits are available for class members to claim. Administrative costs — to be paid separately by the Settling Defendants — in creating and updating a sophisticated database to notify class members, implement the Settlement, and process claims, are estimated at an additional $934,000. The agreed-to attorneys' fees and non-taxable costs of approximately $1,347,000 — which will not reduce benefits payable to class members — bring the total gross value of the Settlement to roughly $4,782,000.

## CONCLUSIONS OF LAW

6. Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by . . . the parties' agreement." The Rule further provides that "[a] claim for an award must be made by motion under Rule 54(d)(2)," notice of which must be "directed to class members in a reasonable manner" and that the Court "must find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h)(1) and (3). In turn, Rule 54(d)(2) requires a claim for fees to be made by motion, and specifies its timing and content, including, in relevant part, "the grounds entitling the movant to the award" and "the amount sought." Fed. R. Civ. P. 54(d)(2)(B). Notice of this fee-award motion was provided in the class notice and on the website.

7. "In class actions, the district court has broad authority over awards of attorneys' fees." *Law v. Nat'l Collegiate Athletic Ass'n*, 4 F. App'x. 749, 751 (10th Cir. 2001) (citation

omitted). In common fund cases like this one, the Tenth Circuit applies a "'hybrid' approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). "Under either methodology, the fee awarded must be reasonable." *Id*. at 482 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir. 1993); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 453 (10th Cir. 1988)). "There are recognized advantages and disadvantages with each method, although the more recent trend has been toward utilizing the percentage method in common fund cases." *Id*. at 483. Indeed, "*Uselton* implies a preference for the percentage of the fund method. In all cases, whichever method is used, the court must consider the twelve . . . factors" set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).[1] *Id.*

8. Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorneys' fees and expenses, and the expenses of administration. *See Boeing v. Gemert*, 444 U.S. 472, 479 (1980) ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation

---

[1] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. "[R]arely are all of the *Johnson* factors applicable." *Uselton*, 9 F.3d at 854. The applicable *Johnson* factors are addressed generally herein and in our preliminary-approval brief. More recent Tenth Circuit and Supreme Court precedent in fee-shifting cases casts doubt on the continuing relevance of the *Johnson* factors. *See Anchondo v. Anderson, Crenshaw & Assocs.,* 616 F.3d 1098, 1103 (10th Cir. 2010) ("In *Perdue* the Court appears to significantly marginalize the twelve-factor *Johnson* analysis") (*citing Perdue v. Kenny A. ex rel. Winn,* 130 S. Ct. 1662, 1673 (2010)).

to each absentee in the exact proportion that the value of his claim bears to the total recovery.") (citation omitted).

9. The Court adopts the percentage-of-the-fund approach, and finds that, under it, the agreed-to fee-and-expense request is reasonable as a matter of law. Here, Settlement Class Counsel estimate that, based on the miles of rights of way covered by the Settlement, if each class member were to claim the available cash benefits, approximately $2,501,000 would be paid to qualifying class members. When estimated administrative costs of $934,000 — to be borne by the Settling Defendants — and the agreed-to attorneys' fees and expenses of $1,347,000 — also to be paid separately by the Settling Defendants — are factored in, the gross value of the Settlement is approximately $4,782,000. The $1,347,000 fee-and-expense award therefore represents approximately 28 percent of the fund as a whole.

10. At roughly 28 percent of the value of the fund as a whole, the fee-and-expense award is well within the range of reasonable percentage-fee awards in this Circuit. *See Cimarron Pipeline Construction, Inc. v. National Council on Compensation,* Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit"); *see also Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, Civil Action No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing, inter alia, *Vaszlavik v. Storage Technology Corp.,* 2000 U.S. Dist. LEXIS 21140, at *10 (D. Colo.

Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable"); *In re Copley Pharmaceutical, Inc.*, 1 F. Supp. 2d 1407, 1412-23 (D. Wyo. 1998) ("The standard contingency fee in individual actions is generally accepted to be 33%. In common fund cases, fees generally range from 20-30% . . . .") (citing *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) and *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (1989)). In the forty-three similar right-of-way settlements that have received final approval, the courts approved fee-and-expense awards to class counsel ranging from 17 to 30 percent of the then-estimated fund.

11. In terms of a lodestar crosscheck, the overlapping nature of fiber-optic-cable right-of-way discovery, motions practice, research, litigation, and settlement efforts across the country for more than a decade — which culminated in this and the other state settlement agreements — have prevented Settlement Class Counsel from segregating their fees and expenses into a "New Mexico-only" category or similar categories for other states. *See* Declaration of Settlement Class Counsel Dan Millea ¶ 16; Declaration of Settlement Class Counsel Irwin Levin ¶ 22. Nonetheless, it is apparent that the New Mexico fee-and-expense request is amply supported by a lodestar crosscheck based on the time and expense incurred, and fees available, in resolution of all the state-by-state settlements of the fiber-optic-cable right-of-way litigation.

12. The total attorneys' fees and expenses incurred by Settlement Class Counsel in the decade-plus of right-of-way litigation culminating in this Settlement, excluding local counsel fees and expenses, were just over $60,000,000 as of March 31, 2011; that number has since increased as Settlement Class Counsel have performed substantial work in seeking approval of the

settlements in courts around the country, and it will continue to do so until the settlements are fully administered.  *See* Millea Decl. ¶ 17; Levin Decl. ¶ 23.  The Settling Defendants in the right-of-way litigation have agreed to pay a total of $41,500,000 in attorneys' fees and expenses in settlement of the forty-six state actions (and the District of Columbia) nationwide.  Millea Decl. ¶ 17; Levin Decl. ¶ 23.  Therefore, the incurred fees and expenses are subject to a *negative* multiplier — roughly .70 — on a nationwide basis and with a pro-rata New Mexico allocation.

13.     Here, there were no objections to the fee-and-expense award, a factor to be considered.  *See Ramah Navajo Chapter v. Norton*, 250 F. Supp. 2d 1303, 1305 (D.N.M. 2002) (recognizing "the absence of any objections to the application for an award of attorney's fees and costs" and approving application).  The Court-approved notice stated that, at the conclusion of the fairness hearing, counsel would seek a fee-and-expense award up to $1,347,000.  The notice also informed class members of their ability to object to the fee request.  No class members objected to it.  The absence of objection by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.

**WHEREFORE** it is **ORDERED** that the motion for an award of attorneys' fees and expenses to Settlement Class Counsel is **GRANTED**.

It is further **ORDERED** that the Court approves a fee-and-expense award of $1,347,000 to Settlement Class Counsel,

It is further **ORDERED** that the Settling Defendants shall deposit the fee-and-expense award approved by the Court into the interest-bearing escrow account — established as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B and as a trust under state law — with U.S. Bank in New York, New York, no later than ten (10) days after the date on which the Order and Judgment becomes Final, that any alleged or actual civil liability

against the Settling Defendants for attorneys' fees arising out of the tort claims resolved by the New Mexico Class Settlement Agreement approved by this Court is satisfied and extinguished through the Settling Defendants' payment of the fee-and-expense award, and that any interest earned on the escrow account shall be recognized as gross income of the Qualified Settlement Fund; and

It is further **ORDERED** that appointment of GFRG as the Fund Administrator for the escrow account is hereby confirmed and that the escrow account shall be governed by the Escrow Agreement entered into as of August 26, 2011 between Settlement Class Counsel, U.S. Bank, and GFRG.

_____
**UNITED STATES DISTRICT JUDGE**